IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **Malikie Innovations Ltd. and** § | | |
| **Key Patent Innovations Ltd.,** § | | |
| § | | |
| Plaintiffs, § | | |
| v. § | | **CIVIL ACTION NO.** |
| § | | |
| **Sophos Ltd.** § | | **JURY TRIAL DEMANDED** |
| § | | |
| Defendant. § | | |
| § | | |

# COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiffs Malikie Innovations Ltd. ("Malikie") and Key Patent Innovations Ltd. ("KPI") (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this Complaint for patent infringement and damages against Defendant Sophos Ltd. ("Sophos" or "Defendant") and, in support, allege the following:

## PARTIES

1. Plaintiff Malikie is the successor-in-interest to a substantial patent portfolio created and procured over many years by Blackberry Ltd., formerly known as Research in Motion Ltd., and its predecessor, subsidiary, and affiliated companies (collectively, "Blackberry"). Malikie is an Irish entity duly organized and existing under the laws of Ireland. Malikie has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

2. Plaintiff KPI is the beneficiary of a trust pursuant to which Malikie owns, holds, and asserts the Asserted Patents (set forth below). KPI is an Irish entity duly organized and existing under the laws of Ireland. KPI has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

3. On information and belief, Defendant Sophos is a corporation organized and existing under the laws of the United Kingdom, with a principal place of business at: The Pentagon, Abingdon Science Park, Abingdon, OX14 3YP United Kingdom. On information and belief, Sophos does business in Texas and in this Judicial District, directly or through subsidiaries or intermediaries, including its facilities, resellers, distributors, partners, and others.

**PATENTS IN SUIT**

4. Malikie is the assignee of and owns all right and title to U.S. Patent Nos. 9,147,085 (the "'085 Patent"); 8,583,980 (the "'980 Patent"); 9,426,145 (the "'145 Patent"); 7,917,829 (the "'829 Patent"); 8,699,999 (the "'999 Patent"); 9,294,470 (the "'470 Patent"); and 9,313,065 (the "'065 Patent") (collectively, "the Asserted Patents").

5. Blackberry developed numerous innovative and diverse technologies, including groundbreaking inventions pertaining to mobile devices and related software and wireless communications technology. Some of these groundbreaking inventions are described and claimed in certain of the Asserted Patents.

6. The '085 Patent, entitled "Method for Establishing a Plurality of Modes of Operation on a Mobile Device," was duly and lawfully issued on September 29, 2015. A true and correct copy of the '085 Patent is attached hereto as Exhibit 1.

7. The '980 Patent, entitled "Low Density Parity Check (LDPC) Code," was duly and lawfully issued on November 12, 2013. A true and correct copy of the '980 Patent is attached hereto as Exhibit 2.

8. The '145 Patent, entitled "Designation of Classes for Certificates and Keys," was duly and lawfully issued on August 23, 2016. A true and correct copy of the '145 Patent is attached hereto as Exhibit 3.

9.      The '829 Patent, entitled "Low Density Parity Check (LDPC) Code," was duly and lawfully issued on March 29, 2011. A true and correct copy of the '829 Patent is attached hereto as Exhibit 4.

10.     The '999 Patent, entitled "System and Method for Application Program Operation on a Wireless Device," was duly and lawfully issued on April 15, 2014. A true and correct copy of the '999 Patent is attached hereto as Exhibit 5.

11.     The '470 Patent, entitled "Certificate Management Method Based on Connectivity and Policy," was duly and lawfully issued on March 22, 2016. A true and correct copy of the '470 Patent is attached hereto as Exhibit 6.

12.     The '065 Patent, entitled "Scattered Pilot Pattern and Channel Estimation Method for MIMO-OFDM Systems," was duly and lawfully issued on April 12, 2016. A true and correct copy of the '065 Patent is attached hereto as Exhibit 7.

13.     On June 7, 2024, Malikie sent Sophos a letter (addressed to Sophos's Chief Legal Officer, Ms. Rasmi Garde) by email offering a license to Malikie's patent portfolio. Malikie's notice letter specifically identified the Asserted Patents, and a set of exemplary Sophos products or services that Malikie believed were infringing these patents (on a patent-by-patent basis). Malikie's letter also specifically noted that its portfolio included patents relating to the WiFi 802.11 standard and that it was willing to offer Sophos a license so that it could "continue its use of the patented technologies."

14.     On information and belief, Ms. Garde read and relayed Malike's notice letter on June 7, 2024 to others at Sophos, the same day it was sent. Neither Ms. Garde nor anyone at Sophos responded to Malikie.

15. Malikie followed up with Ms. Garde by email on July 15, 2024, and did so again on August 7, 2024, August 15, 2024, September 10, 2024, and September 24, 2024, each time asking for a call or meeting to discuss Malikie's patent portfolio and possible licensing terms with Sophos. Malikie has regularly followed-up with additional correspondence since then, on October 8, 2024, October 13, 2024 and October 21, 2024. On information and belief, Ms. Garde read and relayed Malikie's messages to others at Sophos. Still, neither Ms. Garde nor anyone else at Sophos or acting on Sophos's behalf ever responded to Malikie's outreach. As such, Malikie has been left with no choice but to bring this action to enforce its rights as the owner of valid and valuable patents that Sophos is willfully infringing.

## JURISDICTION AND VENUE

16. Plaintiffs incorporate by reference paragraphs 1-15 herein.

17. This civil action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. Thus, this is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331, 1332, and 1338(a).

18. This Court has personal jurisdiction over Sophos, due to at least its continuous presence in, and systematic contact with, the State of Texas and this judicial District. Sophos, directly or through subsidiaries or intermediaries, is registered to do business in the State of Texas with one of its many global offices in Dallas, Texas. Sophos is subject to this Court's jurisdiction pursuant to due process at least as a result of Sophos's substantial business in Texas and this judicial District, including at least part of its infringing activities; the regular conductance of and soliciting business at and from its facilities, and through resellers, distributors, or partners that Sophos has direct or indirect control over; and engaging in persistent conduct and deriving substantial revenue

from goods or services, including hardware, software, or support related goods or services, provided in and from the State of Texas, including this District.

19. This Court further has personal jurisdiction over Sophos because Sophos, directly or through subsidiaries or intermediaries, including its facilities, resellers, distributors, and partners, has committed and continues to commit acts of infringement in this judicial District, giving rise to this action by, among other things, making, using, offering for sale, and/or selling products, services, and systems covered by claims in (and that thereby infringe) the Asserted Patents.

20. Plaintiffs' causes of action arise, at least in part, from Defendant's contacts with and activities in and/or directed to this District and the State of Texas.

21. This Court has personal jurisdiction over Sophos pursuant to TEX. CIV. PRAC. & REM. CODE § 17.041 *et seq.*

22. Venue is proper in this judicial District under 28 U.S.C. § 1391 because, among other things, Sophos is a foreign corporation defendant not resident in the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018).

23. Sophos is doing business, either directly or through respective agents, subsidiaries, or intermediaries, on an ongoing basis in this judicial District and elsewhere in the United States and have committed acts of infringement in this District.

24. Sophos is subject to this Court's jurisdiction pursuant to due process and the Texas Long Arm Statute due at least to its substantial business activities in this State and District, including (a) its past and present infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods

or services, including hardware, software, or support related goods or services, provided to customers in Texas.

## FIRST CLAIM

### (Infringement of the '085 Patent)

25. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-24 of their Complaint.

26. The '085 Patent is generally directed to establishing plural modes of operation on a mobile device, and associating applications on the mobile device with one of a plurality of modes, thereby enhancing mobile device security. Among other benefits, the inventions described in the '085 Patent enable personal mobile devices to be used securely for business purposes within the security framework required by employers.

27. Sophos has, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents (and currently infringing directly and/or under the doctrine of equivalents), one or more claims, including without limitation at least claim 1, of the '085 Patent, by making, using, selling, testing, offering for sale, and/or importing into the United States, Sophos Mobile, a secure Unified Endpoint Management product. An exemplary claim chart demonstrating one way in which Sophos infringed claim 1 of the '085 Patent is attached as Exhibit 8.

28. Sophos also indirectly infringes (and has indirectly infringed) the '085 Patent under 35 U.S.C. § 271(b) and (c).

29. Sophos knowingly, intentionally, and actively aided, abetted, and induced others to directly infringe at least claim 1 of the '085 Patent by, for example, having sold, offered for sale, and encouraged customers to use the Sophos Mobile application in a manner that infringes the '085 Patent. Example portions of Sophos's website reflecting Sophos's action and encouragement,

and inducing acts can be found at: https://www.sophos.com/en-us/products/mobile-control. These portions of Sophos's website remain active and available on Sophos's website even after Malikie sent Sophos notice of its infringement.

30. Sophos contributed to the direct infringement of at least claim 1 of the '085 Patent under 35 U.S.C. § 271(c) by, for example, having supplied, with knowledge of the '085 Patent, a material part of a claimed invention, where the material part was not a staple article of commerce and was incapable of substantial non-infringing use. For example, Sophos provided, owned, operated, sold, offered to sell, lease and/or imported into the United States infringing Sophos Mobile products. These Sophos mobile products are specifically designed and intended to run on a mobile device, and to enable a user to establish a plurality of modes wherein different applications are associated with one of a plurality of modes. There are no substantial non-infringing uses for the Sophos Mobile product other than to use it on a mobile device in an infringing manner. The Sophos Mobile product is not a staple article of commerce. Sophos continued its actions even after being put on notice of the '085 Patent, including its application to the Sophos Mobile product.

31. Sophos's infringement has been willful in view of the above, and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## SECOND CLAIM

**(Infringement of the '980 Patent)**

32. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-31 of their Complaint.

33. The '980 Patent is generally directed to low-density parity checks used in forward error correction techniques, including those used in certain WiFi 802.11 protocols. Among other benefits, the inventions of the '980 Patent improve the speed, accuracy, and efficiency of transmitting information over a communication channel vis-à-vis prior art techniques. The inventions of the '980 Patent accommodate larger code rates vis-à-vis the prior art, with a reduction in encoder complexity.

34. Sophos has, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents (and currently infringing directly and/or under the doctrine of equivalents), one or more claims, including without limitation at least claim 31, of the '980 Patent, by making, using, selling, testing, offering for sale, and/or importing into the United States various WiFi enabled products (including access points). An exemplary claim chart demonstrating one way in which Sophos infringed claim 31 of the '980 Patent is attached as Exhibit 9.

35. Sophos also indirectly infringes (and has indirectly infringed) the '980 Patent under 35 U.S.C. § 271(b) and (c).

36. Sophos knowingly, intentionally, and actively aided, abetted, and induced others to directly infringe at least claim 31 of the '980 Patent by, for example, having sold, offered for sale, and encouraged customers to use its WiFi products in a manner that infringes the '980 Patent. Example portions of Sophos's website reflecting Sophos's actions and encouragement, and inducing acts can be found at: https://www.sophos.com/en-us/products/secure-wifi. These portions of Sophos's website remain active and available on Sophos's website even after Malikie sent Sophos notice of its infringement.

37. Sophos contributed to the direct infringement of at least claim 31 of the '980 Patent under 35 U.S.C. § 271(c) by, for example, having supplied, with knowledge of the '980 Patent, a

material part of a claimed invention, where the material part was not a staple article of commerce and was incapable of substantial non-infringing use. For example, Sophos provided, operated, sold, offered to sell, leased, and/or imported into the United States infringing WiFi-enabled access points. These WiFi products are specifically designed and intended to use the claimed LDPC technology. There are no substantial non-infringing uses for the accused WiFi enabled products. The accused WiFi products are not staple articles of commerce. Sophos continued its actions even after being put on notice of the '980 Patent, including its application to the accused WiFi products.

38. Sophos's infringement has been willful in view of the above, and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

### THIRD CLAIM

**(Infringement of the '145 Patent)**

39. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-38 of their Complaint.

40. The '145 Patent is generally directed to the management of digital identity certificates and cryptographic keys. Among other benefits, the inventions of the '145 Patent improve the robustness of mobile devices, allowing plural modes of operation, for example, providing for both personal and corporate functionality on an application-by-application basis.

41. Sophos has, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents (and currently infringing directly and/or under the doctrine of equivalents), one or more claims, including without limitation at least claim 1 of the '145 Patent by making, using, selling, testing, offering for sale, and/or importing into the United States, Sophos Mobile.

An exemplary claim chart demonstrating one way in which Sophos infringed claim 1 of the '145 Patent is attached as Exhibit 10.

42. Sophos also indirectly infringes (and has indirectly infringed) the '145 Patent under 35 U.S.C. § 271(b) and (c).

43. Sophos knowingly, intentionally, and actively aided, abetted, and induced others to directly infringe at least claim 1 of the '145 Patent by, for example, having sold, offered for sale, and encouraged customers to use the Sophos Mobile application in a manner that infringes the '145 Patent. Example portions of Sophos's website reflecting Sophos's action and encouragement, and inducing acts can be found at: https://docs.sophos.com/central/Mobile/help/en-us/AdminHelp/Policies/AndroidEnterpriseWorkProfile/RootCert/index.html. These portions of Sophos's website remain active and available on Sophos's website even after Malikie sent Sophos notice of its infringement.

44. Sophos contributed to the direct infringement of at least claim 1 of the '145 Patent under 35 U.S.C. § 271(c) by, for example, having supplied, with knowledge of the '145 Patent, a material part of a claimed invention, where the material part was not a staple article of commerce and was incapable of substantial non-infringing use. For example, Sophos provided, owned, operated, sold, offered to sell, lease and/or imported into the United States infringing Sophos Mobile products. These Sophos mobile products are specifically designed and intended to run on a mobile device, and to enable a user to establish two different modes of operation wherein different applications are associated with one of the different modes. There are no substantial non-infringing uses for the Sophos Mobile product other than to use it in an infringing manner. The Sophos Mobile product is not a staple article of commerce. Sophos continued its actions even after being put on notice of the '145 Patent, including its application to the Sophos Mobile product.

45. Sophos's infringement has been willful in view of the above, and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## **FOURTH CLAIM**

**(Infringement of the '829 Patent)**

46. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-45 of their Complaint.

47. The '829 Patent is generally directed to low-density parity checks used in forward error correction techniques, including those used in certain WiFi 802.11 protocols. Among other benefits, the inventions of the '829 Patent improve the speed, accuracy, and efficiency, of transmitting information over a communication channel vis-à-vis prior art techniques. The invention of the '829 Patent accommodates larger code rates vis-à-vis the prior art, with a reduction in encoder complexity.

48. Sophos has, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents (and currently infringing directly and/or under the doctrine of equivalents), one or more claims, including without limitation at least claim 1 of the '829 Patent by making, using, selling, testing, offering for sale, and/or importing into the United States various WiFi enabled products (including access points). An exemplary claim chart demonstrating one way in which Sophos infringed claim 1 of the '829 Patent is attached as Exhibit 11.

49. Sophos also indirectly infringes (and has indirectly infringed) the '829 Patent under 35 U.S.C. § 271(b) and (c).

50. Sophos knowingly, intentionally, and actively aided, abetted, and induced others to directly infringe at least claim 1 of the '829 Patent by, for example, having sold, offered for sale,

and encouraged customers to use its WiFi products in a manner that infringes the '829 Patent. Example portions of Sophos's website reflecting Sophos's action and encouragement, and inducing acts can be found at: https://www.sophos.com/en-us/products/secure-wifi. These portions of Sophos's website remain active and available on Sophos's website even after Malikie sent Sophos notice of its infringement.

51. Sophos contributed to the direct infringement of at least claim 1 of the '829 Patent under 35 U.S.C. § 271(c) by, for example, having supplied, with knowledge of the '829 Patent, a material part of a claimed invention, where the material part was not a staple article of commerce and was incapable of substantial non-infringing use. For example, Sophos provided, operated, sold, offered to sell, leased, and/or imported into the United States infringing WiFi-enabled access points. These WiFi products are specifically designed and intended to use the claimed LDPC technology. There are no substantial non-infringing uses for the accused WiFi enabled products. The accused WiFi products are not staple articles of commerce. Sophos continued its actions even after being put on notice of the '829 Patent, including its application to the accused WiFi products.

52. Sophos's infringement has been willful in view of the above, and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## FIFTH CLAIM

**(Infringement of the '999 Patent)**

53. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-52 of their Complaint.

54. The '999 Patent is generally directed to systems and methods for enhancing the robustness and security of a mobile device. Among other benefits, the inventions of the '999 Patent provide additional security functionality for operating systems.

55. Sophos has, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents (and currently infringing directly and/or under the doctrine of equivalents), one or more claims, including without limitation at least claim 6 of the '999 Patent by making, using, selling, testing, offering for sale, and/or importing into the United States, Sophos XGS firewall appliances. An exemplary claim chart demonstrating one way in which Sophos infringed claim 6 of the '999 Patent is attached as Exhibit 12.

56. Sophos also indirectly infringes (and has indirectly infringed) the '999 Patent under 35 U.S.C. § 271(b) and (c).

57. Sophos knowingly, intentionally, and actively aided, abetted, and induced others to directly infringe at least claim 6 of the '999 Patent by, for example, having sold, offered for sale, and encouraged customers to use the Sophos XGS firewall appliance in a manner that infringes the '999 Patent. Example portions of Sophos's website reflecting Sophos's action and encouragement, and inducing acts can be found at: https://www.sophos.com/en-us/products/next-gen-firewall. These portions of Sophos's website remain active and available on Sophos's website even after Malikie sent Sophos notice of its infringement.

58. Sophos contributed to the direct infringement of at least claim 6 of the '999 Patent under 35 U.S.C. § 271(c) by, for example, having supplied, with knowledge of the '999 Patent, a material part of a claimed invention, where the material part was not a staple article of commerce and was incapable of substantial non-infringing use. For example, Sophos provided, owned, operated, sold, offered to sell, lease and/or imported into the United States infringing Sophos XGS

13

firewall appliances. These Sophos XGS firewall appliances are specifically designed and intended to filter applications using the claimed method. There are no substantial non-infringing uses for the Sophos XGS firewall appliance other than to filter applications in the manner claimed. The Sophos XGS firewall appliances are not staple articles of commerce. Sophos continued its actions even after being put on notice of the '999 Patent, including its application to the Sophos Mobile product.

59. Sophos's infringement has been willful in view of the above, and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## SIXTH CLAIM

**(Infringement of the '470 Patent)**

60. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-59 of their Complaint.

61. The '470 Patent is generally directed to establishing different modes of operations on a mobile device through use of a certificate store associated with a portion of memory on the mobile device. Among other benefits, the inventions described in the '470 Patent enable personal mobile devices to be used securely for business purposes within the security framework required by employers.

62. Sophos has, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents (and currently infringing directly and/or under the doctrine of equivalents), one or more claims, including without limitation at least claim 1 of the '470 Patent by making, using, selling, testing, offering for sale, and/or importing into the United States, Sophos Mobile, a

Unified Endpoint Management product.  An exemplary claim chart demonstrating one way in which Sophos infringed claim 1 of the '470 Patent is attached as Exhibit 13.

63. Sophos also indirectly infringes (and has indirectly infringed) the '470 Patent under 35 U.S.C. § 271(b) and (c).

64. Sophos knowingly, intentionally, and actively aided, abetted, and induced others to directly infringe at least claim 1 of the '470 Patent by, for example, having sold, offered for sale, and encouraged customers to use the Sophos Mobile application in a manner that infringes the '470 Patent.  Example portions of Sophos's website reflecting Sophos's action and encouragement, and inducing acts can be found at: https://docs.sophos.com/central/Mobile/help/en-us/AdminHelp/Policies/AndroidEnterpriseWorkProfile/RootCert/index.html.  These portions of Sophos's website remain active and available on Sophos's website even after Malikie sent Sophos notice of its infringement.

65. Sophos contributed to the direct infringement of at least claim 1 of the '470 Patent under 35 U.S.C. § 271(c) by, for example, having supplied, with knowledge of the '470 Patent, a material part of a claimed invention, where the material part was not a staple article of commerce and was incapable of substantial non-infringing use.  For example, Sophos provided, owned, operated, sold, offered to sell, lease and/or imported into the United States infringing Sophos Mobile products.  These Sophos Mobile products are specifically designed and intended to implement an IT security policy using certificate stores associated with a portion of mobile device memory, such that there are no substantial non-infringing uses other than as claimed in the '470 Patent.  The Sophos Mobile product is not a staple article of commerce.  Sophos continued its actions even after being put on notice of the '470 Patent, including its application to the Sophos Mobile product.

66. Sophos's infringement has been willful in view of the above, and its failure to take any action, even after being put on notice, to stop its infringement or inducement of, or contribution to, infringement by others.

## SEVENTH CLAIM

### (Infringement of the '065 Patent)

67. Plaintiffs re-allege and incorporate herein by reference paragraphs 1-66 of their Complaint.

68. The '065 Patent is generally directed to wireless transmission of pilot symbols using orthogonal frequency division multiplexing frames via multiple antennas in an electronic device. Among other benefits, the '065 Patent provides enhanced mobile device communication capabilities.

69. Sophos has, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 9 of the '065 Patent by making, using, selling, testing, offering for sale, and/or importing into the United States, Wi-Fi enabled products (including access points). An exemplary claim chart demonstrating one way in which Sophos infringed claim 9 of the '065 Patent is attached as Exhibit 14.

## PRAYER FOR RELIEF

WHEREFORE, Malikie and KPI pray for judgment against Sophos as follows:

A. That Sophos has infringed each of the Asserted Patents, and unless enjoined, will continue to infringe one or more of the '085, '145, '999, and '470 Patents;

B. That Sophos infringement of one or more of the '085, '980, '145, '829, '999, and '470 Patents has been willful;

C. That Sophos pay Malikie and KPI damages adequate to compensate Malikie for Sophos past infringement of each of the Asserted Patents, and present and future infringement of the '085, '980, '145, '829, '999, and '470 Patents, together with interest and costs under 35 U.S.C. § 284;

D. That Sophos pay prejudgment and post-judgment interest on the damages assessed;

E. That Sophos pay Malikie and KPI enhanced damages pursuant to 35 U.S.C. § 284;

F. That Sophos be enjoined from infringing the '085, '145, '999, and '470 Patents, or if its infringement is not enjoined, that Sophos be ordered to pay ongoing royalties to Malikie and KPI for any post-judgment infringement of the '085, '980, '145, '829, '999, and '470 Patents;

G. That this is an exceptional case under 35 U.S.C. § 285; and that Sophos pay Malikie and KPI's attorneys' fees and costs in this action; and

H. That Malikie and KPI be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Malikie and KPI hereby demands a trial by jury on all issues triable to a jury.

Respectfully submitted,

*/s/ Patrick Colsher by permission Andrea L. Fair*
Matthew G. Berkowitz
Patrick Colsher – LEAD ATTORNEY
Aaron Morris
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com
pcolsher@reichmanjorgensen.com
amorris@reichmanjorgensen.com

Khue V. Hoang
Reichman Jorgensen Lehman & Feldberg LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
khoang@reichmanjorgensen.com

Peter Park
Reichman Jorgensen Lehman & Feldberg LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Tel: (202) 894-7310
ppark@reichmanjorgensen.com

Of Counsel:

Andrea L. Fair
Texas Bar No. 24078488
Claire Abernathy Henry
Texas State Bar No. 24053063
MILLER FAIR HENRY PLLC
1507 Bill Owens Pkwy.
Longview, TX 75604
Tel: (903) 757-6400
andrea@millerfairhenry.com
claire@millerfairhenry.com

*Attorneys for Plaintiffs Malikie Innovations Ltd. and Key Patent Innovations Ltd.*